

2004 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

3-19-2004

# Doe v. Groody

Precedential or Non-Precedential: Precedential

Docket No. 02-4532

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2004

Recommended Citation

"Doe v. Groody" (2004). *2004 Decisions.* Paper 886.
http://digitalcommons.law.villanova.edu/thirdcircuit_2004/886

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2004 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

PRECEDENTIAL

UNITED STATES COURT OF
APPEALS
FOR THE THIRD CIRCUIT

———

No. 02-4532

———

JOHN DOE, Parent and Natural
Guardian of Mary Doe, a minor;
JANE DOE, Parent and Natural
Guardian of Mary Doe, a minor,
and in her own right; RICHARD DOE

v.

JOSEPH GROODY; MICHAEL
AULENBACH; ADAM BERMODIN;
SUSAN JONES; BOROUGH OF
ASHLAND; ROBERT PHILLIPS;
JEFFREY WALCOTT; R. P.
SCHAEFFER; BOROUGH OF
SCHUYLKILL HAVEN; JACK
SHEARIN; BOROUGH OF
FRACKVILLE; ROBERT BRUCE,
Office of the Attorney General, Bureau
of Narcotics Investigation (BNI),
Commonwealth of Pennsylvania;
OFFICE OF ATTORNEY GENERAL,
BUREAU OF NARCOTICS
INVESTIGATION (BNI),
COMMONWEALTH OF
PENNSYLVANIA; SCHUYLKILL
COUNTY DRUG TASK FORCE,
County of Schuylkill

Joseph Groody; Adam Bermodin;
Robert Phillips; Robert Bruce,

Appellants

———

On Appeal from the United States
District Court
for the Middle District of Pennsylvania
(Dist. Court No. 00-cv-00356)
District Judge: Honorable James F.
McClure, Jr.

———

Argued: September 15, 2003

Before: ALITO, AMBRO and
CHERTOFF, Circuit Judges.

(Filed March 19, 2004)

Andrew A. Solomon (Argued)
2 Long Lane
Malvern, PA 19355

John M. Dodig
Master, Weinstein, Schnoll & Dodig
1818 Market Street, Suite 3620
Philadelphia, PA 19103

Counsel for Appellees

John G. Knorr, III, Esq. (Argued)
15th Floor
Office of Attorney General of
Pennsylvania

1

Department of Justice
Strawberry Square
Harrisburg, PA 17120

Counsel for Appellants

———

OPINION OF THE COURT

———

CHERTOFF, Circuit Judge.

Four police officers appeal from the denial of qualified immunity in a lawsuit alleging the unlawful search of occupants of a residence in Schuylkill County, Pennsylvania. The officers argue that they did not violate clearly established federal constitutional rights when they searched a mother and her ten year old daughter in the course of executing a search warrant for narcotics at their home.

The appeal turns on the scope of search authorized by the warrant. To resolve this issue, we must consider under what circumstances the scope of a warrant may be expanded by looking to the accompanying affidavit. We hold it to be clearly established that unless a search warrant specifically incorporates an affidavit, the scope of the warrant may not be broadened by language in that affidavit. We also conclude that, under any reasonable reading, the warrant in this case did not authorize the search of the mother and daughter, and that the search was not otherwise justified. Accordingly, we will affirm the District Court's determination that the officers are not

entitled to qualified immunity.

I.

On March 6, 1998, as the result of a long-term investigation of John Doe for suspected narcotics dealing, officers of the Schuylkill County Drug Task Force ("Task Force") sought a search warrant for Doe and his residence.[1] The typed affidavit in support of the warrant application stated, in pertinent part, that a reliable confidential informant had purchased methamphetamine on several occasions from John Doe, at Doe's "residence/office," or from a Volkswagen automobile parked in front. In addition, the affidavit noted that individuals with histories of prior narcotics use or with drug gang affiliations had been observed by Task Force members entering or leaving John Doe's residence. Finally, the affidavit indicated that the most recent methamphetamine purchase by the informant had occurred within the preceding 48 hours.

The typed affidavit requested permission to search John Doe's residence and his Volkswagen for drugs, paraphernalia, money, drug records and other evidence. Additionally, the affidavit stated:

> The search should also

———

[1] We refer to the family in question as Doe because they filed their case under that name, although the actual names of family members are disclosed in the record.

2

include all occupants of the residence as the information developed shows that [Doe] has frequent visitors that purchase methamphetamine. These persons may be on the premises at the time of the execution of the search warrant and many attempt to conceal controlled substances on their persons.

. . .

This application seeks permission to search all occupants of the residence and their belongings to prevent the removal, concealment, or destruction of any evidence requested in this warrant. It is the experience of your co-affiants that drug dealers often attempt to do so when faced with impending apprehension and may give such evidence to persons who do not acutally reside or own/rent the premises. This is done to prevent the discovery of said items in hopes that said persons will not be subject to search when police arrive.

. . .

As a result of the information developed, your affiant requests that a search warrant . . . be issued for . .

. the residence of [John Doe] and all occupants therein.

¶¶ 17, 20, & 21.

The typed affidavit was signed on the last page by a police officer, under whose signature was the entry: "Sworn and subscribed before District Justice James R. Ferrier 21-3-03, this 6th of March 1998." Under the legend was the Magistrate's signature, followed by the phrase "Issuing Authority" and the impression of a rubber stamp.

The warrant was attached to a separate printed face sheet, entitled "Search Warrant and Affidavit." That form contained boilerplate introductory language, followed by open blocks for someone to type information. The first block asked for the identity of the "items to be search for and seized." The following blocks asked, in turn, for a "[s]pecific description of premises and/or persons to be searched"; the "[n]ame of owner, occupant or possessor of said premises to be searched"; a description of the nature and date of the statutory violations; and for the basis of "[p]robable cause belief." Finally, the printed face sheet contained a space to delineate the results of the search, to be completed after the warrant was executed.

These printed blocks were completed. In response to the questions "[d]ate of violation" and "[p]robable cause belief," the face sheet specifically referred to the typed affidavit of probable cause attached to the warrant. But in answering

the question "[s]pecific description of premises and/or persons to be searched," the attached typed affidavit was not mentioned. Rather, the form contained a typewritten entry naming only John Doe, giving his description, date of birth and social security number, and identifying and describing John Doe's residence.

The printed warrant and affidavit face sheet was signed by the same police officer and "issuing authority" who had signed the underlying typed affidavit.

Armed with the warrant, Task Force police went to the John Doe house to carry out the search. Evidently, they anticipated encountering females because they enlisted a female traffic meter patrol officer to be available if necessary to assist in the search. As the officers approached the house, they met John Doe, and brought him into the house. Once inside, however, the officers found no visitors, but only John Doe's wife, Jane, and their ten year old daughter, Mary.

The officers decided to search Jane and Mary Doe for contraband, and sent for the meter patrol officer. When she arrived, the female officer removed both Jane and Mary Doe to an upstairs bathroom. They were instructed to empty their pockets and lift their shirts. The female officer patted their pockets. She then told Jane and Mary Doe to drop their pants and turn around. No contraband was found. With the search completed, both Jane and Mary Doe were returned to the ground floor to await the end of the search.

John and Jane Doe filed a complaint under 42 U.S.C. § 1983 on their own behalf, and on behalf of Mary Doe, against the searching officers and their superiors, and against various government entities. The Does alleged, among other things, that the officers illegally strip searched Jane and Mary Doe. After preliminary litigation skirmishing, a number of claims and parties were dismissed, and discovery was conducted. Cross motions for summary judgment were filed. One of these was a motion by individual police officers for summary judgment rejecting the strip search claim on the ground of qualified immunity. The District Court granted the motion for two officers, but denied qualified immunity to officers Joseph Groody, Adam Bermodin, and Robert Phillips and Agent Robert Bruce, the four Task Force officials who were directly involved in the search of Jane Doe and Mary Doe. The District Judge also granted partial summary judgment against those four officers on the issue of liability.

The four Task Force officers appeal the denial of summary judgment based on qualified immunity.

II.

We have jurisdiction over that portion of the District Court's decision rejecting the claim of qualified immunity by the four officers. Although the litigation below is far from concluded, a denial of qualified immunity that turns on an issue of law—rather than a factual dispute—falls within the collateral order

doctrine that treats certain interlocutory decisions as "final" within the meaning of 28 U.S.C. § 1291. Behrens v. Pelletier, 516 U.S. 299, 307, 313 (1996); Mitchell v. Forsythe, 472 U.S. 511, 525 (1985); In re Montgomery County, 215 F.3d 367, 373 (3d Cir. 2000). All parties here acknowledge, and we agree, that there is no genuine issue of fact that relates to the qualified immunity issue that is being appealed. Accordingly, we may decide this appeal. Our review of this legal issue is plenary. Eddy v. V.I. Water and Power Auth., 256 F.3d 204, 208 (3d Cir. 2001); Torres v. McLaughlin, 163 F.3d 169, 170 (3d Cir. 1998).

Qualified immunity protects law enforcement officers from being tried for actions taken in the course of their duties. If the immunity applies, it entitles the officer to be free of the "burdens of litigation." Mitchell, 472 U.S. at 526. But the immunity is forfeited if an officer's conduct violates "clearly established statutory or constitutional rights of which a reasonable person would have known." Wilson v. Layne, 526 U.S. 603, 614 (1999) (quoting Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982)). To determine in this case whether the officers have lost their immunity, we must engage in a two step analysis. First, we must decide "whether a constitutional right would have been violated on the facts alleged . . . ." Saucier v. Katz 533 U.S. 194, 200 (2001). Because we consider an appeal by the officers from the denial of their motion for summary judgment, we must evaluate the undisputed facts based on the summary judgment record, drawing all inferences in favor of the plaintiff. Behrens, 516 U.S. at 309; Torres, 163 F.3d at 170. Second, if we believe that a constitutional violation did occur, we must consider whether the right was "clearly established." Saucier, 533 U.S. at 201; see Groh v. Ramirez, 540 U.S. __, No. 02-811, slip op. at 12 (U.S. filed Feb. 24, 2004).[2] The question is "whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." Id. at 202. This is an objective inquiry, to be decided by the court as a matter of law. Bartholomew v. Pennsylvania, 221 F.3d 425, 428 (3d Cir. 2000).

### III.

The constitutional violation at issue here arises under Jane and Mary Doe's Fourth (and Fourteenth) Amendment rights to be free of unreasonable searches and seizures.[3] Both Jane and Mary Doe were physically removed to the bathroom

---

[2] Groh, which bears heavily on this case, was decided well after this case was briefed and argued. That decision has not altered the law that previously applied in this area.

[3] Because the Fourth Amendment (as incorporated into the Fourteenth) furnishes the "explicit textual source" for the constitutional protection against unlawful searches and seizures, we look to it, rather than more general notions of due process, in analyzing the claim of constitutional violation. Albright v. Oliver, 510 U.S. 266, 273 (1994).

5

of their house and detained there for a period of time. They were asked to remove or shift articles of clothing and were visually inspected and touched by a female officer who was searching for contraband. Later, they were moved to the ground floor and detained there during the balance of the house search.

The nature of the intrusion alleged is significant. In Leveto v. Lapina, 258 F.3d 156, 172-75 (3d Cir. 2001), this Court held that, as of 2001, it was unclear whether police searching a premises could permissibly detain those present or "frisk" them for protective purposes. But the facts here are different than those in Leveto. Although Jane and Mary Doe were detained during the course of the search in this case, the District Court denied qualified immunity for the *search,* not the *detention*. Insofar as Leveto discusses detention, therefore, it is irrelevant to this issue. Similarly, neither the Does nor the officers contend that the search here was a protective "frisk" or search for weapons that is justified on less than full probable case. See Terry v. Ohio, 392 U.S. 1, 16, 25-30 (1968); Leveto, 258 F.3d at 163-64. Rather, the officers concede that Jane and Mary Doe were searched for possible evidence or contraband, and not because they were viewed as possibly armed or dangerous. Indeed, it is difficult to conceive how the search of a ten-year old child in these circumstances could be justified as part of a "protective sweep." Because the decision in Leveto concerned the special rules governing protective searches, it

simply does not address the non-protective body search that is before us in this matter.

A non-protective search must normally be supported by probable cause, and, with certain exceptions, must be authorized by a warrant. The officers principally argue that the search of both females was covered by the warrant for the search of the house and was supported by probable cause. If a warrant did indeed authorize a search of Jane and Mary Doe, then the officers were entitled to rely upon it to satisfy the probable cause requirement, and there was no constitutional violation.[4] United States v. Leon, 468 U.S. 897, 922 (1984).

The face of the search warrant here, however, does not grant authority to search either Jane or Mary Doe. The block designated for a description of the person or place to be searched specifically names John Doe, and identifies and describes his residence. Nothing in that portion of the printed warrant refers to any other individual, named or unnamed, to be searched. Seeking to remedy this omission, the officers argue that the warrant should be read in light of the accompanying affidavit which requested permission to search "all occupants" of the

---

[4] Of course, that reliance presupposes that there is no deliberate material misrepresentation in the supporting affidavit. See Franks v. Delaware, 438 U.S. 154, 155 (1978). There is no allegation of such a misrepresentation in this case.

6

residence. They conclude that the warrant should be read in "common sense" fashion, as supplemented by the affidavit. If that contention is correct, then police had legal authority to search anybody that they encountered inside the house when they came to execute the warrant.

To be sure, a warrant must be read in a common sense, non-technical fashion. United States v. Ventresca, 380 U.S. 102, 109 (1965). But it may not be read in a way that violates its fundamental purposes. As the text of the Fourth Amendment itself denotes, a particular description is the touchstone of a warrant. U.S. Const. amend. IV. The requirement of a particular description *in writing* accomplishes three things. First, it memorializes precisely what search or seizure the issuing magistrate intended to permit. Second, it confines the discretion of the officers who are executing the warrant. Marron v. United States, 275 U.S. 192, 196 (1927). Third, it "inform[s] the subject of the search what can be seized." Bartholomew, 221 F.3d at 429. For these reasons, although a warrant should be interpreted practically, it must be sufficiently definite and clear so that the magistrate, police, and search subjects can objectively ascertain its scope. See Groh, 540 U.S. at ___, slip op. at 5.

As the officers correctly observe, it is perfectly appropriate to construe a warrant in light of an accompanying affidavit or other document that is incorporated within the warrant. But to take advantage of this principle of interpretation, the warrant must expressly incorporate the affidavit. Bartholomew, which the officers invoke, makes this very point. In that case, we observed that "'[w]hen a warrant is accompanied by an affidavit that is incorporated by reference, the affidavit may be used in construing the scope of the warrant.'" Id. at 428 (quoting United States v. Johnson, 690 F.2d 60, 64-65 (3d Cir. 1982), cert. denied, 459 U.S. 1214 (1983)). We dwelled at some length on the importance of making that incorporation clear. Id. at 428 & n.4 (citing cases). The Supreme Court has very recently re-emphasized this point in Groh. 540 U.S. at ___, slip op. at 6.

In this case, there is no language in the warrant that suggests that the premises or people to be searched include Jane Doe, Mary Doe, "all occupants" or anybody else, save John Doe himself. Other portions of the face sheet which describe the date of the violation and the supporting probable cause do refer to the attached typed affidavit. But this fact is actually unhelpful to the officers, since it demonstrates that where the face sheet was intended to incorporate the affidavit, it said so explicitly. As a matter of common sense, as well as logic, the absence of a reference to the affidavit must therefore be viewed as negating any incorporation of that affidavit.[5]

---

[5] At oral argument, counsel for the officers suggested that the signature of the Magistrate under the oath line on the affidavit somehow converted the affidavit into a warrant. But counsel conceded that there is nothing in the record to support

7

We recognize that there are decisions in which an affidavit has been used to save a defective warrant even when it has not been incorporated within that warrant. But the cases fall into two categories. The first embraces those circumstances in which the warrant contains an ambiguity or clerical error that can be resolved with reference to the affidavit. In these situations, it is clear that the requesting officers and the magistrate agreed on the place to be searched or item to be seized, but there is an obvious ministerial error in misidentifying or ambiguously identifying the place or item. See, e.g., United States v. Ortega-Jimenez, 232 F.3d 1325, 1329 (10th Cir. 2000) (ambiguous term); United States v. Simpson, 152 F.3d 1241, 1248 (10th Cir. 1998) (internal inconsistency in warrant). Reliance on the affidavit in these circumstances neither broadens nor shrinks the scope of the warrant, but merely rectifies a "[m]inor irregularit[y]." United States v. Johnson, 690 F.2d at 65 n.3 (quoting Ventresca, 380 U.S. at 108).

The omission of Jane Doe, Mary Doe, or "all occupants" from the warrant in this case cannot be viewed as the sort of ambiguity or misidentification error that can be clarified by inspecting the affidavit. This warrant has no ambiguous or contradictory terms on its face. Rather,

the language of the warrant is inconsistent with the language of the affidavit, because the former does not grant what the latter sought—permission to search "all occupants" of the house. That is not a discrepancy as to form; it is a difference as to scope. And it is a difference of significance. A state magistrate reviewing a search warrant affidavit might well draw the line at including unnamed "all occupants" in the affidavit because Pennsylvania law disfavors "all occupant" warrants. See Commonwealth v. Gilliam, 560 A.2d 140, 142 (Pa. 1989). Thus, the circumstances of this warrant are a far cry from those in the category of warrants which can be "clarified" by a separate affidavit.

The second category of decisions in which an unincorporated affidavit has been read to modify a search warrant is constituted by cases in which the affidavit is particularized but the warrant is overbroad. See, e.g., United States v. Bianco, 998 F.2d 1112, 1116-17 (2d Cir. 1993); United States v. Towne, 997 F.2d 537, 547 n. 5 (9th Cir. 1993) (discussing cases). So long as the actual search is confined to the *narrower* scope of the affidavit, courts have sometimes allowed the unincorporated affidavit to "cure" the warrant, id., or at least have treated the excessive elements of the warrant as harmless surplusage, see United States v. Stefonek, 179 F.3d 1030, 1033-34 (7th Cir. 1999).[6]

---

the notion that, by witnessing the affiant's oath, the judge intended to convert the police officer's wish into a judicial command. Without some support for this strained contention, we decline to adopt it.

---

[6] For the same reasons, this Court has upheld redaction as a means of

Commonwealth v. Carlisle, 534 A.2d 469 (Pa. 1987), cited by the officers on this appeal, is a good example. There, the police searched a specific apartment at an address. The affidavit identified the apartment number and street address, but the search warrant only mentioned the street address. Noting that the officers had only searched the specific apartment for which they had requested the warrant, the Supreme Court of Pennsylvania held that the arguably overbroad scope of the warrant should be read narrowly in light of the affidavit. In other words, the warrant clearly authorized the search of the specific apartment and, perhaps, too much more. Since the police limited themselves to the narrow search—which was clearly permitted by the warrant and supported by the affidavit—the affidavit was permitted to narrow the scope of the warrant. Tellingly, the court observed that had the police searched more broadly, the fruits of that search would have been suppressed. Id. at 472.

In the case we consider now, however, the circumstances are precisely the reverse of the preceding category of "cure" cases. Here, the affidavit is broader than the warrant, and the police in fact searched more broadly than the warrant. Unlike Carlisle, then, the officers seek to use the affidavit to expand, rather than limit, the warrant. That makes all the difference.

_____

narrowing a warrant. United States v. Christine, 687 F.2d 749, 759-60 (3d Cir. 1982).

The warrant provides the license to search, not the affidavit. Cases such as Bianco, Towne and Carlisle may allow us to rescue an overbroad warrant if the police forbear from exercising the full measure of its excessive scope. It does not follow that we can rescue an overbroad search if the police exceed the full measure of the warrant. Bluntly, it is one thing if officers use less than the authority erroneously granted by a judge. It is quite another if officers go beyond the authority granted by the judge. Were we to adopt the officers' approach to warrant interpretation, and allow an unincorporated affidavit to expand the authorization of the warrant, we would come dangerously close to displacing the critical role of the independent magistrate.

This point was reemphasized forcefully this term by the Supreme Court in Groh v. Ramirez. In Groh, the Bureau of Alcohol, Tobacco and Firearms completed an application and affidavit that detailed with specificity that the agents sought to search for and seize a cache of firearms suspected to be located at the home of Joseph Ramirez. Groh, 540 U.S. at __, slip op. at 2. The warrant was less specific. In the portion of the printed warrant form "that called for a description of the 'person or property' to be seized," the agents identified the location to be searched, but neither listed the items to be seized nor "incorporate[d] by reference the itemized list contained in the application." Id. The warrant did refer to the affidavit by reciting that the Magistrate was satisfied that the affidavit established

probable cause to believe that contraband was concealed on the premises. Id. On the authority of the warrant, the Bureau searched Ramirez's house. Id. at 3. The Bureau did not seize anything, nor were any charges filed against Ramirez.[7] Id. Ramirez sued Groh and the other officers for a Fourth Amendment violation.

The facts in Groh were strikingly similar to those in this case:

In Groh, as here, the agents submitted an application and affidavit that detailed what they wanted to search and to seize. Id. at 2.

In Groh, as here, the affidavit sought to supply probable cause to search for, and seize, those listed items. Id.

In Groh, as here, the warrant form was prepared by the officer who wrote the affidavit, and who presumably intended the warrant to authorize the search and seizure of the items in the affidavit. Id. at 12.[8]

___

[7] At the conclusion of the search, agents provided Ramirez's wife with a copy of the warrant, though not a copy of the application and affidavit, which had been sealed. Agents did provide copies of the relevant portions of the application upon a request by Ramirez's lawyer, however. Groh, 540 U.S. at __, slip op. at 3.

[8] Indeed, because the officer who wrote the affidavit also drafted the warrant form, the Supreme Court found the defective warrant less justifiable, saying:

In Groh, as here, the warrant expressly referred to the affidavit in affirming the existence of probable cause, but not in describing what was to be searched and seized. Id. at 2-3.

In Groh, as here, the Magistrate reviewed the warrant and affidavit, and did not alter the warrant before signing it.

On these facts, the Supreme Court held the search warrant invalid. Id. at 11. The Court's reasoning turned precisely on the sharp distinction the law draws between what is authorized in a warrant, and what is merely an application by the police. Id. at 5-6. The Court recognized that the application and affidavit contained an adequate description of the items to be seized, but observed that because neither was incorporated by reference into the warrant description of "'persons or property' to be seized," their contents were irrelevant. Id. at 2, 5-6. But the Court explicitly rejected the argument that one could infer that the Magistrate must have intended the warrant to authorize the full scope of what was sought in the affidavit:

> [U]nless the particular items described in the affidavit are also set forth in the warrant itself . . . there can be no written assurance that the Magistrate actually found

___

"[B]ecause petitioner himself prepared the invalid warrant, he may not argue that he reasonably relied on the Magistrate's assurance that the warrant contained an adequate description . . . ." Id. at 12.

probable cause to search for, and to seize, every item mentioned in the affidavit.

. . .

The mere fact that the Magistrate issued a warrant does not necessarily establish that he agreed that the scope of the search should be as broad as the affiant's request.

Id. at 8, 9. That rule disposes of appellants' reliance on the affidavit here.

Moreover, this case would be a particularly bad instance in which to allow a broad affidavit to overwhelm a narrow warrant. For when we examine the affidavit on which the officers rely, it is doubtful that probable cause exists to support a search of John Doe's wife and minor daughter. Paragraphs 17 and 20—which are the provisions seeking to justify an "all occupants" search—quite specifically argue that visitors may be present purchasing drugs and that dealers often give contraband to non-residents of a house in the hopes they will not be searched. We look in vain for any assertion that narcotics dealers often hide drugs on family members and young children. Perhaps they do; but the judge reviewing this affidavit would not know it. So, if anything, these paragraphs of the affidavit appear to undermine the probable cause to search Jane and Mary Doe. That is all the more reason to doubt that the Magistrate's failure to include these two family members in the warrant was an

oversight. And that also makes it all the less reasonable to read permission to search them into the text of the warrant.

We are mindful that search warrants and affidavits are often prepared under time pressure and should not be subjected to microscopic dissection. But the warrant plays a critical role under the Fourth Amendment. At some point, flexibility becomes breakage. The warrant must be written with objective definition, or its scope will not be discernable to those who are bound to submit to its authority, whether they are police or subjects of the search. By the same token, without a clear reference to the affidavit in the warrant, the former cannot simply be assumed to broaden the latter. Otherwise, we might indeed transform the judicial officer into little more than the cliche "rubber stamp."

Finally, we consider whether the search of Jane and Mary Doe can be justified on some basis other than the warrant. The officers have not seriously pressed this argument, but the District Court did consider whether the officers had probable cause to search Jane and Mary Doe under an exception to the warrant requirement.

None appears. A search warrant for a premises does not constitute a license to search everyone inside. Ybarra v. Illinois, 444 U.S. 85 (1979). The record does not disclose any independent basis to suspect Jane Doe—let alone 10-year old Mary Doe—of drug activity. While the officers justified their decision to conduct

11

the personal searches because of the ease with which contraband could be concealed on those present in the searched premises, that is precisely the justification for a personal search that has been rejected by the Supreme Court. Id. at 94-96. Simply put, there is none of the kind of "particularized" probable cause required for a search in circumstances such as these. Id. at 91.

## IV.

Having determined that the search of Jane and Mary Doe violated theFourth Amendment, what remains is to decide whether this violation transgressed "clearly established" rights. The District Court held that it did, and the officers argue that the District Court applied the "clearly established" test at too high a level of generality.

We agree that in determining whether a right is "clearly established," we should analyze the right with specificity. Bartholomew, 221 F.3d at 429. Where a challenged police action presents a legal question that is "unusual and largely heretofore undiscussed," id. at 429, or where there is "at least some significant authority" that lends support of the police action, Leveto, 258 F.3d at 166, we have upheld qualified immunity even while deciding that the action in question violates the Constitution. On the other hand, the plaintiff need not show that there is a prior decision that is factually identical to the case at hand in order to establish that a right was clearly established. "A right may be clearly established even if there is 'no previous precedent directly in point.'" Id. at 162 (quoting Good v. Dauphin County Soc. Servs. for Children & Youth, 891 F.2d 1087, 1092 (3d Cir. 1989)).

The principal narrow question in this case is whether in 1999, when these searches occurred, it was clearly established that police could not broaden the scope of a warrant with an unincorporated affidavit. We think that a review of the cases indicates that it was.

We begin with the settled proposition that the Fourth Amendment "prevents the seizure of one thing under a warrant describing another." Marron, 275 U.S. at 196. That is both uncontroverted and long established. As we observed above, a warrant may be modified by an affidavit when it is expressly incorporated by reference. We so held as early as our 1982 decision in United States v. Johnson, 690 F.2d at 64-65. Pennsylvania cases agree. See Commonwealth v. Wilson, 631 A.2d 1356, 1358 (Pa. Super. Ct. 1993).[9] But there is no express incorporation here.

---

[9] Wilson specifically held that a reference to all persons present in an affidavit cannot be relied upon where it is not referenced in the warrant: "[T]he issuing authority neither authorized nor found probable cause for an 'all persons present' warrant. This is clear from a reading of the warrant. The only reference to such a warrant appears in the affidavit; the warrant itself does not appear to have granted the request." 631 A.2d at 1358.

What is significant is that the officers can point to no precedent that allowed an unincorporated affidavit to *expand* a search warrant. Although there are decisions that allow unincorporated affidavits to *clarify* or *narrow* overbroad warrants, we have explained at considerable length why these are a totally different matter. This is not an arcane or legalistic distinction, but a difference that goes to the heart of the constitutional requirement that judges, and not police, authorize warrants. An officer may reasonably rely on a magistrate's approval of an overbroad warrant because the officer normally should not be penalized for the magistrate's mistake. See Massachusetts v. Sheppard, 468 U.S. 981, 990 (1984); U.S. v. Ninety-Two Thousand Four Hundred Twenty-Two Dollars and Fifty Seven Cents, 307 F.3d 137, 152 (3d Cir. 2002). But there is no reasonable basis for an officer to exceed the scope of a warrant just because he asked for broader search authority in the affidavit. In the latter instance, the officer has not relied on, but has disregarded, the magistrate's judgment.

Our decision is fully consistent with the Supreme Court's decision in Groh. There, considering a warrant that failed to specify items to be seized in a house that was being searched, the Court dismissed the contention that omission of this description was not clearly unconstitutional, or a good faith error. Rather, the Court stated: "[A]s we observed in the companion case to Sheppard, 'a warrant may be so facially

deficient -- *i.e.*, in failing to particularize the place to be searched or the things to be seized -- that the executing officers cannot reasonably presume it to be valid.'" Groh, 540 U.S. at __, slip op. at 13 (quoting Leon, 468 U.S. at 923). The flaw here was every bit as manifest as the omission in the warrant in Groh.

Finally, even if an exception to the warrant requirement did apply, it is clear that the search of Jane and Mary Doe for evidence had to be based on probable cause, and not on a generalized concern that those present at a search might hide evidence. That principle was established as early as 1979. Ybarra, 444 U.S. at 94-96.

Searching Jane and Mary Doe for evidence beyond the scope of the warrant and without probable cause violated their clearly established Fourth Amendment rights. Accordingly, we will affirm the decision of the District Court rejecting qualified immunity for the searches, and remand the case for further proceedings consistent with this opinion.

13

ALITO, <u>Circuit Judge</u>, dissenting:

I would reverse the order of the District Court and direct that summary judgment be entered in favor of the defendants. First, the best reading of the warrant is that it authorized the search of any persons found on the premises. Second, even if the warrant did not contain such authorization, a reasonable police officer could certainly have read the warrant as doing so, and therefore the appellants are entitled to qualified immunity.

I.

Search warrants are "normally drafted by nonlawyers in the midst and haste of a criminal investigation." <u>United States v. Ventresca</u>, 380 U.S. 102, 108 (1965). Consequently, they are to be read "in a commonsense and realistic fashion." <u>Id</u>. Here, the "commonsense and realistic" reading is that the issuing magistrate intended to authorize a search of all the occupants of the premises and that the warrant did so. Five points are important to keep in mind.

First, there is no doubt that the search warrant application sought permission to search all occupants of the premises. Indeed, the affidavit made this request in three separate paragraphs. Paragraph 17, after asking for authorization to search John Doe's home and car, added:

> ***The search should also include all occupants of the residence*** as the information developed shows that [John Doe] has frequent visitors that purchase methamphetamine. These persons may be on the premises at the time of the execution of the search warrant and may attempt to conceal controlled substances on their persons.

App. 498a (emphasis added).

Paragraph 20 reiterated that request:

> ***This application seeks permission to search all occupants of the residence*** and their belongings to prevent the removal, concealment, or destruction of any evidence requested in this warrant.

And paragraph 21 repeated the

14

request a third time:

> As a result of the information developed, your affiant requests that a search warrant for methamphetamine and other controlled substances, drug paraphernalia, drug records, monies, proof of residence/ownership, documents, photographs, and weapons be issued for 618 Center St. Ashland, Pa., the residence of [John Doe] ***and all occupants therein***.

App. 498a (emphasis added).

Second, the affidavit also clearly attempted to establish probable cause to search all occupants of the premises. The two affiants, who had background and training in drug cases, stated that, in their experience, drug dealers, when faced with "impending apprehension," often give evidence to other persons present on the premises in the hope that "said persons will not be subject to search when police arrive" and that this will "prevent the discovery of said items." See App. 494a.

Third, the warrant as drafted was intended to authorize a search of all persons on the premises. The warrant was drafted by the officers who applied for the warrant and was typed by one of those officers. App. 348a. Since the officers were seeking permission to search all occupants of the premises, they obviously intended for the draft warrant that they submitted to the magistrate to authorize the search of such persons.

Fourth, the warrant expressly incorporated the affidavit with respect to the issue that was most critical to the request to search all occupants, viz., the issue of probable cause. While probable cause to search premises does not necessarily provide probable cause to search every person who is found on the premises, see Ybarra v. Illinois, 444 U.S. 85 (1979), *if* there is probable cause to believe that all of the persons found on the premises possess on their persons either contraband or evidence of a crime, there is no reason why a warrant authorizing a search of all such persons should not be issued. In this case, as noted, the affidavit submitted in support of the warrant application claimed that there was probable cause to search all such persons, and the warrant expressly incorporated that claim.

Fifth, after the warrant and affidavit were reviewed by the District Attorney's office and presented to a magistrate, the magistrate carefully reviewed these documents and signed the warrant without alteration.

15

Under these circumstances, the "commonsense and realistic" reading of the warrant is that it authorized a search of all occupants of the premises. It seems quite clear that the magistrate intended to authorize a search of all occupants of the premises. As noted, the application repeatedly requested such authorization and set out facts that the officers (and presumably the District Attorney's office) regarded as establishing probable cause. The warrant indisputably incorporated the affidavit with respect to the issue of probable cause, and the magistrate signed the warrant without alteration. The only reasonable inference is that the magistrate agreed with the affidavit that there was probable cause to search all occupants of the premises and that the magistrate intended to authorize such a search. The magistrate must have understood that the officers, who had drafted the warrant, believed that the warrant, if signed, would give them authorization to carry out a search of the scope specified in the application, viz., a search of "all occupants." As a result, the magistrate surely would not have signed the warrant without modification if the magistrate had not wished to confer that authority.

The majority, however, raises a formal objection to the warrant. The majority contends that the warrant unambiguously limits the persons to be searched to John Doe alone. In reaching this conclusion, the majority relies on the entry that the officers placed in the box entitled "SPECIFIC DESCRIPTION OF PREMISES AND/OR PERSONS TO BE SEARCHED." App. 493a. In that box, the officers placed the name of John Doe, followed by his race, sex, date of birth, hair and eye color, and Social Security number. Id. The officers also included the address and a fairly detailed description of the premises. Id. This information more than filled the space allotted. Id.

At their depositions, both of the officers who signed the affidavit explained why they did not note in the box in question that the warrant authorized a search of all occupants of the premises. They stated that there simply was not room in that box and that the incorporation of the affidavit into the warrant (which was noted in the box entitled "PROBABLE CAUSE BELIEF IS BASED ON THE FOLLOWING FACTS AND CIRCUMSTANCES"[10]) was meant to provide a full description of the persons to be searched.[11]

_____

[10]The affidavit is also cross-referenced in the box entitled DATE OF VIOLATIONS." App. 498a.

[11]Officer Schaeffer testified that John Doe was mentioned in the box at issue because he "was the target," but Officer Schaeffer added: "As you can see, that box is filled. You can't include everything there." App. 402a. See also id. at 403a. He stated that the affidavit was "part of the search warrant and we include everything that we want in that affidavit of probable cause . . . . It's impossible to fit everything we want in these little boxes

16

they give us." <u>Id</u>. at 402a-03a.

Officer Phillips gave a similar explanation:

> Q. Okay. You'll agree with me, sir, that on the face of the warrant it calls, under the heading "Specific Description of Premises and/or Persons to be Searched" the only individual named there is [John Doe], is that correct?
>
> A. That is correct. And the reason for that is there's not enough room in that block to indicate every possible name of individuals who might be in the residence to be searched. That's why we extended into the probable cause affidavit, just as the rest of the information is in the probable cause affidavit. It would not fit on the face sheet of this warrant.
>
> Q. So it's your testimony that the only reason that the words and other, "and other occupants of the residence" do not appear on the face of the search warrant is there's no room?
>
> A. There's no room to list all of the occupants who may have been in the residence at the time with,

For present purposes, however, the majority attaches no significance to the entry in the box concerning probable cause. The majority takes the position that the only relevant entry is the one in the box entitled "SPECIFIC DESCRIPTION OF PREMISES AND/OR PERSONS TO BE SEARCHED." Because that entry does not refer to all occupants of the premises and does not state that the affidavit is incorporated for the purpose of specifying the persons to be searched, the majority concludes that the warrant does not authorize a search of all such persons. The majority states that the "warrant has no ambiguous . . . terms on its face" and that it is therefore improper to look beyond the face of the warrant. Maj. Op. at 8.

I believe that the majority's analysis is flawed. First and most important, the majority employs a technical and legalistic method of interpretation that is the antithesis of the "commonsense and realistic" approach that is appropriate.[12]

---

> along with an explanation of what "other occupants" are, include visitors, family members.

App. at 353a.

[12] The majority's mistaken approach is further exemplified by its suggestion that the affidavit does not actually state that, in the experience of the affiants, drug dealers "often hide drugs on family members and young children." Maj. Op.

17

at 11. The pertinent paragraph of the affidavit states:

> This application seeks permission to search all occupants of the residence and their belongings to prevent the removal, concealment, or destruction of any evidence requested in this warrant. It is the experience of your co-affiants that drug dealers often attempt to do so when faced with impending apprehension and may give such evidence to persons who do not actually reside or own/rent the premises. This is done to prevent the discovery of said items in hopes that said persons will not be subject to search when police arrive.

The commonsense reading of this paragraph is that, in the experience of the affiants, drug dealers, when they are about to be arrested, often give contraband or incriminating evidence to other persons who are on the premises ("occupants") in the hope that these persons will not be searched. The majority notes that this passage does not literally state that "narcotics dealers often hide drugs on family members and young children," but this is precisely the sort of technical, legalistic reading that is out of place in

Second, the face of the warrant here does not unambiguously restrict the persons to be searched to John Doe alone. As previously noted, the question whether occupants other than John Doe should be searched was closely tied (if not identical) to the question whether there was probable cause to search such persons, and the face of the warrant incorporated the affidavit with respect to the issue of probable cause. This incorporation, at the very least, creates a sufficient ambiguity to permit consideration of the affidavit and the circumstances surrounding the application.

For these reasons, I would hold that the warrant did in fact authorize a search of all persons on the premises, including Jane and Mary Doe.

The majority strives to justify its decision by invoking the Supreme Court's recent decision in Groh v. Ramirez, No. 02-811(Sup. Ct. Feb. 24, 2004), but Groh simply does not speak to the question that divides this panel, i.e., the degree of technical precision that should be demanded in determining whether a warrant adequately incorporates an attached application or affidavit.

In Groh, law enforcement officers submitted an application for a warrant to search a ranch for firearms, explosives,

---

interpreting a search warrant or supporting affidavit.

18

and records and later carried out a search for these items, but the warrant did not state that a search for such items was authorized *and did not incorporate the application*. Id. at 2. In addition, when the search was completed, the officers gave one of the owners of the ranch a copy of the warrant, "*but not a copy of the application, which had been sealed*." Id. at 3 (emphasis added). The Court held that the warrant was defective because it did not particularly describe the type of evidence sought. Id. at 5. However, the Court was careful to distinguish the case before it from a case in which a warrant incorporates another document that contains such a specification. Id. at 5-6. The Court wrote:

> We do not say that the Fourth Amendment forbids a warrant from cross-referencing other documents. Indeed, most Courts of Appeals have held that a court may construe a warrant with reference to a supporting application or affidavit if the warrant uses appropriate words of incorporation, and if the supporting document accompanies the warrant. . . . . But in this case the warrant did not incorporate other documents by reference, nor did either the affidavit or the application (which had been place under seal) accompany the

warrant. Hence, we need not further explore the matter of incorporation.

Id. at 6.

My disagreement with the majority concerns the question whether the mode of incorporation in this case was adequate, and Groh does not speak to this question. Groh merely refers without elaboration to "appropriate words of incorporation." Slip Op. at 6. In my view, the appropriateness of "words of incorporation" is to be judged by the "commonsense and realistic" standard that is generally to be used in interpreting warrants. The majority, however, reads the warrant in this case almost as if it were a contract subject to the doctrine of contra proferentum. Groh does not justify such an approach.

II.

Even if the warrant did not confer such authorization, a reasonable officer certainly could have believed that it did, and therefore the defendants' motion for summary judgment based on qualified immunity should have been granted. See Anderson v. Creighton, 483 U.S. 635, 640-41(1987). Qualified immunity "provides ample protection to all but the plainly incompetent or those who knowingly violate the law." Malley v. Briggs, 475 U.S. 335, 341 (1986). See also, e.g.,

19

Saucier v. Katz, 533 U.S. 194, 202 (2001). The appellants in this case did not exhibit incompetence or a willingness to flout the law. Instead, they reasonably concluded that the magistrate had authorized a search of all occupants of the premises where: (1) that is what the application sought; (2) the affidavit asserted that there was probable cause for such a search; (3) the warrant expressly incorporated the affidavit on the issue of probable cause, (4) the language of the warrant was drafted to confer authorization to search all occupants, and (4) the magistrate signed the warrant without modification. In light of the discussion of these points in part I of this opinion, it is unnecessary to address them further here.[13]

In sum, the District Court erred in denying the defendants' motion for summary judgment. I share the majority's visceral dislike of the intrusive search of John Doe's young daughter, but it is a sad fact that drug dealers sometimes use children to carry out their business and to avoid prosecution. I know of no legal principle that bars an officer from searching a child (in a proper manner) if a warrant has been issued and the warrant is not illegal on its face. Because the warrant in this case authorized the searches that are challenged – and because a reasonable officer, in any event, certainly could have thought that the warrant conferred such authority – I would reverse.

---

[13]The plaintiffs argue that there was no probable cause to search them, but whether or not there was probable cause, when a warrant is issued, officers who execute the warrant are entitled to qualified immunity unless "the warrant application is so lacking in indicia of probable cause as to render official belief in its existence unreasonable." Malley v. Briggs, 475 U.S. at 344-45. That high standard is not met here.

20