**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 12-3055
_____

DARRELL MCKOY

v.

DESHAN CARTER; GUIRLENE DIAZ; LINDEN POLICE DEPARTMENT;
MICHAEL BOYLE, LINDEN POLICE CHIEF; JAMES EDGAR, LINDEN POLICE
OFFICER; JASON MOHR, LINDEN POLICE OFFICER; PAUL ZACK, LINDEN
POLICE OFFICER; KAULFERS, LINDEN POLICE OFFICER; BARWICK, LINDEN
POLICE OFFICER; JOHN DOES (#1 THRU 5); JOHN SMITH (#1 THRU 5); JANE
SMITH (#1 THRU 5) fictitious names of persons presently unknown; CITY OF LINDEN

James Edgar and Jason Mohr,

Appellants

_____

On Appeal from the United States District Court
for the District of New Jersey
(D.C. Civil No. 2-09-cv-04170)
District Judge: Hon. Katharine S. Hayden

_____

Submitted Pursuant to Third Circuit LAR 34.1(a)
October 11, 2013

BEFORE: FUENTES, COWEN, and BARRY,  Circuit Judges

(Filed:  October 29, 2013)
_____

OPINION
_____

COWEN, Circuit Judge.

Linden Police Officers James Edgar and Jason Mohr ("Appellants") appeal an order of the District Court denying their jointly filed motion for summary judgment on Appellee Darrell McKoy's excessive force claims. Appellants argue that they are entitled to qualified immunity.

For the reasons set forth below, we conclude that we lack jurisdiction to consider this interlocutory appeal. Accordingly, the appeal will be dismissed.

I.

Because we write exclusively for the parties, who are familiar with the factual context and legal history of this case, we set forth only the facts that are necessary for our analysis. These facts are agreed-upon by the parties to this appeal, except where otherwise noted.

In the summer of 2007, the City of Linden, New Jersey and the Borough of Roselle, New Jersey created the Linden-Roselle Joint Patrol Initiative, which facilitated community policing of ongoing gang violence in the area. On August 29, 2007, Roselle detectives received an anonymous tip that four black males from Linden were planning a gang-related drive-by shooting, and would be driving a small black four-door car. The tip indicated that a man nick-named "Face" might be involved in the shooting. "Face" was a known alias of Deshan Carter.[1]

The next evening, a drive-by shooting occurred in Roselle. Eyewitnesses

_____

[1] Carter is a defendant to the action. He has not, however, filed any brief in

2

reported seeing four black males in a black, four-door car circle the area and leave the scene of the shooting at a high rate of speed.  The officers who responded to the shooting expected that a retaliatory shooting would occur that evening.

Later that evening, five individuals, including Appellee McKoy and Carter, were together on a street in Linden.  McKoy's girlfriend, Laura Diaz, was sitting in her car, a black Honda.  The other four individuals were standing on the street.  A grey minivan drove by and fired four shots at the Honda.  The individuals who were standing on the street got into the Honda, and, with Carter driving, took off at a high rate of speed.

A 911 caller who heard the shots reported seeing four black males leave the scene in a black, four-door car.  Three police cars—including one driven by Appellant Officer Mohr and another driven by Appellant Officer Edgar—pursued the black Honda.  Edgar, whose car was in the lead, turned on his lights and sirens, signaling the Honda to pull over.  Carter did not pull over, and instead continued driving.

Carter eventually drove up onto a curb, pinning the Honda between a low retaining wall and a parked van.  Edgar and Mohr parked their patrol cars behind and to the side of the Honda, blocking it, and approached on foot.  Edgar approached the driver's side window with his firearm drawn and told the occupants to turn off the car and show their hands.  Instead of obeying, Carter continued to operate the Honda, driving it backward and forward.  Edgar and Mohr shot the Honda approximately four times, and one of those bullets struck McKoy in the back.

connection with this appeal.

The parties' accounts of the incident diverge in certain respects. Appellants, for example, assert that Edgar was informed at the scene of the first shooting that "Face"— i.e., Carter—was a suspect in the shooting. They also assert that Edgar previously had encounters with Carter in Linden, recognized Carter as the driver of the Honda, and believed that Carter, while driving the Honda, was attempting to flee from the police.

According to Appellants, when Edgar stood alongside the driver's side window and pointed his gun at Carter, Carter began to laugh at him, shifted the Honda into reverse, and then shifted the Honda back into drive. Appellants contend that Carter used the Honda to assault Edgar by driving toward Edgar and striking him in the left knee with the left-front wheel of the car.[2] As a result, Edgar immediately shot at Carter. Carter then shifted the Honda into reverse and drove toward Mohr, who was able to get out of the way without being hit. When the Honda moved forward again, toward Edgar, Mohr fired his gun. When the Honda's brake lights flashed, both Edgar and Mohr feared that Carter would attempt to strike either or both of them with the car. Edgar fired another bullet at the Honda, which sped away.

McKoy offers a different account of the events underlying the incident. For instance, he disputes that Edgar was aware that Carter was a suspect in the first shooting. He noted before the District Court that the officers who investigated that shooting wrote incident reports, none of which mentioned Carter—as either "Face" or Carter— in any

---

[2] The District Court noted that Carter was charged with and pleaded guilty to aggravated assault in connection with this incident.

4

respect. McKoy also provides a markedly different account of the shooting that lies at the core of this appeal. At their respective depositions, McKoy, Carter, and two of the Honda's other occupants testified that Carter never hit Edgar with the car, nor drove it at Mohr. McKoy testified Carter, after pinning the Honda between the retaining wall and the parked van, kept the Honda in neutral, allowing it to roll approximately one to three feet backwards. He then shifted the car into drive and turned the wheel to clear the parked van. According to McKoy, the Honda was moving slowly and Carter was maneuvering it in an attempt to escape. Four of the car's occupants testified that the officers fired shots at the back of the Honda as it drove away from the officers.

McKoy brought this action pursuant to 42 U.S.C. § 1983 in the District Court, alleging that Appellants used excessive force when they shot at the Honda and, in so doing, shot him in the back.[3] Appellants moved for summary judgment in their favor and against McKoy, arguing that they are entitled to qualified immunity. The District Court denied that motion, concluding that disputed material facts prevented the District Court from immediately determining whether, as a matter of law, Appellants' use of force was

---

[3] McKoy also raised various other causes of action against Edgar, Mohr, Carter, and other defendants. The District Court dismissed the defendant Michael Boyle from the action, and later entered summary judgment against McKoy and in favor of the defendants Guirlene Diaz, City of Linden, Linden Police Department, Paul Zack, "Kaulfers," and "Barwick." It appears that the only claims remaining in the action are set forth in Count I (a negligence claim asserted against Carter), Count III (an excessive force claim asserted against Edgar and Mohr), and Count IX (insofar as it is construed as an excessive force claim asserted against Edgar and Mohr). This appeal only involves the excessive force claims.

objectively reasonable.  (*See* J.A. 18 ("[M]aterial issues of fact must be resolved by a jury before [the District Court] can determine the reasonableness of the officers' conduct.").)

Appellants filed a notice of appeal and the Clerk of this Court ordered the parties—i.e., Edgar and Mohr, and McKoy— to file written submissions related to this Court's jurisdiction to review a non-final order of the District Court.  Those parties filed letters, and the Clerk directed them to brief the jurisdictional issue before this panel.

## II.

We must determine as a threshold matter whether we have jurisdiction to hear this appeal.  As a general rule, we only have jurisdiction of "final decisions" of district courts. *See* 28 U.S.C. § 1291.  "[I]nterlocutory appeals—appeals before the end of district court proceedings—are the exception, not the rule." *Johnson v. Jones*, 515 U.S. 304, 309 (1995).

An exception to the general rule applies, however, for certain denials of qualified immunity.  This exception arises under the collateral order doctrine. *See Mitchell v. Forsyth*, 472 U.S. 511, 525-26 (1985).  Under the collateral order doctrine, "an interlocutory order of a district court may be treated as a 'final decision' if it: '(1) conclusively determine[s] the disputed question, (2) resolve[s] an important issue completely separate from the merits of the action, and (3) [is] effectively unreviewable on appeal from a final judgment.'" *Blaylock v. City of Philadelphia*, 504 F.3d 405, 408 (3d Cir. 2007) (quoting *Johnson*, 515 U.S. at 310).  District Court orders denying qualified immunity generally meet the first and third criteria.  "The more difficult question is

6

whether and to what extent the appealed order resolves an important issue completely separate from the merits of the action." *Id.* at 408-09 (internal quotation marks omitted). This Court, when addressing that criterion, has determined that "denial of qualified immunity falls within the collateral-order doctrine only to the extent the denial turns on an issue of law." *In re Montgomery Cnty.*, 215 F.3d 367, 373 (3d Cir. 2000); *see also Doe v. Groody*, 361 F.3d 232, 237 (3d Cir. 2004). If such denial turns on issues of disputed facts, we lack jurisdiction of a related appeal. *See Groody*, 361 F.3d at 237.

Here, the District Court denied Appellants' motion for summary judgment after determining the resolution of the motion was controlled by disputed material facts. The District Court correctly stated that a determination of whether Appellants are entitled to qualified immunity hinges on whether their actions were "reasonable in light of the facts and circumstances available to the officer at the time." (J.A. 14 (quoting *Curley v. Klem*, 499 F.3d 199, 207 (3d Cir. 2007)). The District Court then demonstrated how disputed material facts controlled the resolution of Appellants' motion. Under Appellants' version of the facts—wherein Carter drove the Honda toward Edgar, used the Honda to strike Edgar, and drove the car toward Mohr, and it later appeared that he might drive the car toward either Edgar or Mohr again—Appellants may have been justified to use deadly force based on a concern for their own safety. However, under McKoy's version of the facts, the Honda posed little or no risk to their safety and Edgar and Mohr fired at the back of the car as it drove away from them. The District Court determined that, viewing the facts in the light most favorable to McKoy, a reasonable jury could believe his version

7

of the incident and conclude that the officers' use of force was unreasonable. (*See* J.A. 18 ("The competing versions of events—did Carter use the car as a weapon against the officers who then used their guns to fire at the car, or did the officers fire at the car when it ignored their commands and drove away—cannot be reconciled.").)

For the foregoing reasons, the District Court properly denied Appellants' motion for summary judgment, and thus properly denied them qualified immunity at this stage of the proceedings. Under these circumstances, we do not have jurisdiction to consider their interlocutory appeal. *See Barton v. Curtis*, 497 F.3d 331, 336 (3d Cir. 2007) ("Because the District Court denied summary judgment on the ground that there is a material issue of fact to be determined by the jury, the order . . . is one of the limited instances in which this Court does not have jurisdiction to hear an appeal of summary judgment in a 42 U.S.C. § 1983 cause of action where the defendant is asserting qualified immunity.").

Appellants urge us to look beyond the facts explicitly considered by the District Court, and to vacate the District Court's decision and grant them qualified immunity in consideration of all of the facts and circumstances attendant to their interactions with McKoy and Carter. Such facts include those relating to the above-mentioned gang activity and drive-by shootings. But it would be inappropriate to take such action. Appellants contend that: (1) they believed that Carter was involved in a drive-by shooting in the City of Linden; (2) Carter may have jeopardized Appellants', other officers', and ordinary citizens' safety by driving erratically while participating in that drive-by shooting and by later attempting to evade the police; and (3) Carter ignored Appellants'

8

commands, and attempted to drive away from Appellants when they surrounded his vehicle. Even accepting Appellants' contentions as true, we cannot say as a matter of law that it was reasonable to fire at the back of the Honda.

We recognize that "police officers are often forced to make split-second judgments—in circumstances that are tense, uncertain, and rapidly evolving." *Graham v. Connor*, 490 U.S. 386, 397 (1989). For those and other reasons, however, questions relating to Edgar's and Mohr's entitlement to qualified immunity are best decided by the District Court, after all of the material factual disputes are properly resolved.

### III.

For the foregoing reasons, we lack jurisdiction to consider this interlocutory appeal.