**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 15-1943
_____

MARY ESTEP, in her own right and as personal
representative for the Estate of Craig Baum, deceased

v.

POLICE OFFICER MACKEY; BOROUGH OF CRESSON; TOWNSHIP OF
CRESSON; BOROUGH OF PORTAGE; OFFICER KELLY BOLVIN; BOROUGH OF
SOUTH FORK; POLICE OFFICER DONALD WYAR

Police Officer Mackey,
Appellant

_____

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA
(D.C. No. 3-11-cv-00207)
District Judge: Hon. Kim R. Gibson
_____

Submitted Under Third Circuit LAR 34.1(a)
January 29, 2016
_____

Before: VANASKIE, SHWARTZ, and RESTREPO, <u>Circuit Judges</u>.

(Filed: February 12, 2016)

_____

OPINION*

_____

SHWARTZ, <u>Circuit Judge</u>.

Plaintiff Mary Estep, on behalf of Craig Baum, sued police officer Robert Mackey under 42 U.S.C. § 1983, alleging that his use of a taser against Baum constituted excessive force. Mackey appeals the District Court's order denying him summary judgment based on qualified immunity. Because the District Court did not clearly define the right at issue in light of the facts of this case and assess whether such a right was clearly established at the time the allegedly violative conduct occurred, we will vacate the order denying summary judgment and remand.

I

Mackey and Donald Wyar are police officers employed by the Pennsylvania Boroughs of Cresson and Portage. Wyar received a tip that a large quantity of heroin was being transported from Pittsburgh to Portage in a green car by Baum and Ryan Konsavich. Wyar told Mackey about the tip and asked if he knew the suspects. Mackey was aware of Konsavich's reputation for drug involvement, but did not know Baum.

On September 20, 2009, Mackey claims that he saw Konsavich with a man and woman in a green car at a convenience store in Cresson. Mackey says that he spoke to

_____

* This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7 does not constitute binding precedent.

the man, who Mackey asserts was Baum, and that the man told him that he was enjoying his last few days of freedom before being sentenced for armed robbery. Mackey called Wyar to notify him that he had seen Konsavich with a man and woman in a green car and that the woman was driving. However, the woman, Baum's girlfriend Regine Robine, testified that she did not see Mackey at the convenience store.

Later that night, Wyar saw the same green car swerve and almost hit a road sign, leading him to stop the vehicle that Baum and Robine occupied. Wyar requested backup from Mackey and a female officer.

Wyar gave Robine a written warning for the traffic violation and told her that she was free to go, but then asked her whether she had been in Pittsburgh earlier that day, causing her to become upset. Wyar asked if she had been driving under the influence of any substances, and Robine said that she had taken Xanax. Robine then consented to a search of the car.

Wyar removed Baum from the car, patted him down, found no weapons, and put him in the back seat of the police car for the duration of the search. In the green car, Wyar found a torn stamp bag and a straw typically used to snort heroin, but not the large quantity of heroin that he expected based on the tip he had received. The officers called for a K-9 unit to come search further for any drugs.

The parties dispute what occurred next. Mackey claims that Baum and Robine admitted to using heroin on their way back from Pittsburgh, and that Wyar then told

3

Baum that he was under arrest. In contrast, Plaintiff contends that Baum was never told that he was under arrest, citing the fact that Wyar's police report does not indicate an arrest, that Baum was not handcuffed, and that the officers lacked probable cause to arrest him. Instead, Plaintiff asserts that Baum was essentially a passenger in a traffic stop who voluntarily agreed to a search.

The subsequent events, however, are uncontested. Baum and Robine voluntarily consented to strip searches and the female officer took Robine into the police station for the search. Mackey walked Baum towards the police station, which was just thirty feet away, without handcuffing him. Mackey removed his taser from its holster and told Baum that if he ran, he would be tased. Mackey then walked Baum to the police station with one hand on his arm and the taser in his other hand. Mackey let go of Baum to unlock the door to the station and Baum jerked away and began to run across the street. While Baum was in the middle of the street, six to eight feet ahead of Mackey, Mackey fired his taser, which attached to Baum's back, for a five-second interval. The electricity from the taser caused Baum to lose muscle control, fall to the ground, and strike his head on the curb.[1] Baum sustained a traumatic brain injury which later rendered him incapacitated.

---

[1] When asked why he had run, Baum admitted that he had stuffed heroin down his pants; the officers recovered the heroin.

On Baum's behalf, his guardian Mary Estep filed claims under § 1983 against Mackey for excessive force, as well as the Boroughs of Cresson and Portage for municipal liability for failure to train and supervise their officers. The District Court granted summary judgment in favor of the Boroughs but denied summary judgment to Mackey on the excessive force claim and for qualified immunity, citing genuine issues of material fact that must be resolved by a jury, including whether the incident took place in the context of an arrest, and whether Baum posed a threat to the safety of the officers or others. Mackey appeals.

## II[2]

Usually, we have appellate jurisdiction to consider only a district court's final orders. 28 U.S.C. § 1291. However, § 1291 also permits interlocutory review of "certain collateral orders . . . because they finally determine claims of right too important to be denied review and too independent of the cause itself to require that appellate consideration be deferred until the whole case is adjudicated." Forbes v. Twp. of Lower Merion, 313 F.3d 144, 147 (3d Cir. 2002) (internal quotation marks, alterations, and citation omitted). This "collateral-order doctrine" allows us to review certain orders that deny a defendant's motion for summary judgment on qualified immunity grounds because qualified immunity "is an immunity from suit rather than a mere defense to liability and is effectively lost if a case is erroneously permitted to go to trial." Id.

---

[2] The District Court had jurisdiction under 28 U.S.C. § 1331.

(internal quotation marks, alterations, and citation omitted, emphasis in original). We may conduct interlocutory review of orders that deny summary judgment on qualified immunity grounds based upon an issue of law. Id. If, however, the denial turned on an issue of fact, then we lack jurisdiction to consider the appeal. Johnson v. Jones, 515 U.S. 304, 319-20 (1995); Doe v. Groody, 361 F.3d 232, 237 (3d Cir. 2004). Here, the District Court's order turned on its view that there were disputed issues of material fact, but it reached this conclusion without identifying with the requisite level of specificity the right that was allegedly violated and whether that right was clearly established at the time of the conduct at issue. This omission constitutes a legal error that requires us to vacate the order denying summary judgment. Forbes, 313 F.3d at 149-50; Grant v. City of Pittsburgh, 98 F.3d 116, 121 (3d Cir. 1996).

Qualified immunity is an affirmative defense that shields government officials "from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Pearson v. Callahan, 555 U.S. 223, 231 (2009) (quoting Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982)). A clearly established right is one that is "sufficiently clear that every reasonable official would have understood that what he is doing violates that right." Mullenix v. Luna, 136 S. Ct. 305, 308 (2015) (internal quotation marks and citation omitted).

This analysis requires a court to identify the right at issue and determine if that right was clearly established at the time of the officer's action. With respect to the first task, courts "must define the right allegedly violated at the appropriate level of specificity." Sharp v. Johnson, 669 F.3d 144, 159 (3d Cir. 2012). The Supreme Court has instructed courts "not to define clearly established law at a high level of generality." Ashcroft v. al-Kidd, 131 S. Ct. 2074, 2084 (2011). Rather, the right at issue must be framed "in a more particularized, and hence more relevant, sense, in light of the case's specific context, not as a broad general proposition." Spady v. Bethlehem Area Sch. Dist., 800 F.3d 633, 638 (3d Cir. 2015) (quotation marks and citations omitted).

In this case, the District Court defined the right at issue as the Fourth Amendment right to be free from the excessive use of force. This formulation lacks the required level of specificity and does not address the question that needs to be answered in this context because it does not describe the specific situation that the officers confronted. See Mullenix, 136 S. Ct. at 309. As a result, we will remand to the District Court to allow it to more specifically identify the right at issue.

After the District Court formulates the right, its second task will be to determine if that right was clearly established at the time the taser was used against Baum. While there need not be a case on point, "existing precedent must have placed the statutory or

constitutional question beyond debate."[3] al-Kidd, 131 S. Ct. at 2083. Put differently, while a court need not find that "the very action in question has previously been held unlawful," Anderson v. Creighton, 483 U.S. 635, 640 (1987), to be clearly established, it must "conclude that the firmly settled state of the law, established by a forceful body of persuasive precedent, would place a reasonable official on notice that his actions obviously violated a clearly established constitutional right."[4] Spady, 800 F.3d at 639. If the District Court determines that such a right was clearly established, it would then determine whether the facts it already correctly found to be in dispute are material to assessing whether that right was violated.[5]

---

[3] There could be situations in which no reasonable officer could conclude that the use of a taser was reasonable force. In such a circumstance, "the police do not need judges to explain the obvious to them before they can be held accountable for an unreasonable or excessive use of force." Brown v. Burghart, No. 10-3374, 2012 WL 1900603, at *11 (E.D. Pa. May 25, 2012) (internal quotation marks and citations omitted). We express no view as to whether this case falls into this category.

[4] Our Court has not yet spoken in a precedential opinion about taser use and we decline to do so here, as the District Court has not specifically identified the right allegedly violated and whether it was clearly established at the time Baum was tased. As stated in the text, the identification of the right depends upon the factual circumstances of the case.

[5] We note that the District Court has already identified disputed facts that are material to evaluating the reasonableness of force as a general matter under the factors set forth in Graham v. Connor, 490 U.S. 386, 396 (1989) and Kopec v. Tate, 361 F.3d 772, 776-77 (3d Cir. 2004), such as whether Mackey had any knowledge about Baum's criminal history when he encountered him, whether Baum was under arrest at the time he fled, whether there was probable cause for an arrest, and whether he posed any threat to the officers on the scene, particularly in light of the fact he had been patted down and found to possess no weapons. If the District Court determines that the right at issue was clearly established, and these facts are relevant to determine whether Mackey violated this right, then a jury should decide them.

### III

For the foregoing reasons, we will vacate the order denying qualified immunity and remand for further proceedings consistent with this opinion.