**UNITED STATES of America, Plaintiff–Appellee,**

v.

**Gregory Michael CELESTINE, aka Michael Erickson, Gregory Celestine, Michael Celestine and Michael Ericson, Defendant–Appellant.**

**No. 00–50669.**

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Feb. 14, 2003.

Filed April 4, 2003.

Gerson Simon, Los Angeles, CA, for the defendant-appellant.

Michael J. Raphael, Assistant United States Attorney, Los Angeles, CA, for the plaintiff-appellee.

Before: B. FLETCHER, ALARCÓN, and HAWKINS, Circuit Judges.

BETTY B. FLETCHER, Circuit Judge.

Gregory M. Celestine ("Celestine"), who pled guilty conditionally to drug crimes, appeals the district court's denial of his motion to suppress evidence obtained during a search, pursuant to a warrant, of a house of which he was a part owner. He contends that the search warrant was not served properly because the affidavit in support of probable cause did not accompany the other documents that comprised the warrant and was served on his attorney after the search was completed. He also contends that the district court incorrectly held that the warrant itself was validly supported by probable cause and that it was timely served on him. We affirm the district court.

## I. Factual Background & Procedural History

This case arises out of a search that Drug Enforcement Agency agents con-

ducted at a house in Canyon Lake, California, while Celestine was present and that revealed a largescale indoor marijuana growing operation. The house belongs to Ericson Production, Inc., a fictional company of which Celestine is a co-owner and, under the alias of "Michael Ericson," president.[1] The search was conducted pursuant to a warrant issued by a federal magistrate judge based on an affidavit from DEA special agent Anthony Zavacky ("Zavacky") who had significant experience investigating indoor drug growing operations.

## A. Affidavit

Zavacky's affidavit contained the following pertinent information: In 1998, Zavacky received information from an unidentified source that a woman named "Laura" had a father who was growing marijuana in a house in Canyon Lake, California. In May, 1999, the source informed Zavacky that the house in question was on a specific street in Canyon Lake; that it's architecture resembled a "castle"; and that Laura's father did not have a job and lived solely by cultivating marijuana.

The affidavit indicated that Zavacky drove to the street, which is a cul-de-sac with four houses. Only one of the houses resembled a "castle." Utility records for that house indicated that "Deborah Davis" (who was listed as self-employed with "Heron Comput") had been the utility subscriber since October, 1997.[2] A comparison of the house's electrical consumption against that of four other homes of similar size in the neighborhood revealed that from December, 1997, to May, 1999, the castle-like house used twice the electricity of each of the other four houses. Electrical consumption at the house also increased significantly beginning in December, 1998, at the same time that the house was purchased by Ericson Production, Inc., from William Hansen, an absentee owner. The affidavit explained that unusually high consumption of electricity not otherwise explained is often a sign of an indoor drug-growing operation.

The affidavit also recounted that on December 12, 1998, January 9, 1999, January 30, 1999, April 18, 1999, and May 10, 1999, a person named "Brent Sewell" was a guest at the house. The DEA database indicates that Michael Brent Seawell is suspected of selling marijuana clones or clippings for indoor growing in the San Diego, California, area. Other persons were also observed leaving the house, including William Primanto, and Laura Quinonez (also known as Laura Van Antwerp). The affidavit noted that there was a suspect named Edward Joseph Van Antwerp in another indoor marijuana cultivation case being investigated by an investigator from the Sheriff's Department.

The affidavit stated that in June, 1999, Zavacky and an investigator from the Sheriff's Department searched trash from the house and discovered an empty bottle of pH reducer from Foothill Hydroponics in North Hollywood, California. In Zavacky's experience pH reducer is used to encourage maximum yield and "budding" in indoor marijuana cultivation and Foot-

---

1. Records of the Canyon Lake Properties Association listed "Kevin Celestine" and "Gregory Celestine" as co-owners of Ericson Production, Inc. The president was listed as "Michael Erickson." A government search for a company named "Ericson Production, Inc." with a president called "Michael Ericson" or "Michael Erickson" revealed that no such entity was registered as a corporation in the United States. Ericson Production's prior address, as recorded in Riverside, California, is also fictitious.

2. Other than being named as the utilities subscriber the DEA was unable to find any link between any person named Deborah Davis and the house.

hill Hydroponics sold products that could be used to grow marijuana indoors. Moreover, according to Zavacky, indoor marijuana cultivators often travel long distances to buy hydroponic supplies in order to avoid detection by local law enforcement. Zavacky and the investigator also found a pair of dull scissors with green residue on the blades. The residue tested positive for the presence of THC, and subsequent forensic tests confirmed that the residue was marijuana.

According to the affidavit, in June, 1999, William Primanto ("Primanto") was observed leaving the house and driving to Foothill Hydroponics, where he purchased two boxes of grodan cubes and sheets of mylar.[3] As additional support and in order to justify searching for specific items—including computer and electronic equipment—the affidavit also described generally how, in Zavacky's experience, drug traffickers and growers operate.

### B. Service of the Warrant & Suppression Hearing

On June 29, 1999, a few days after Primanto was followed to Foothill Hydroponics and Zavacky found the scissors and pH reducer, Zavacky and a few other DEA agents went to the house to execute a search warrant issued by a federal magistrate judge based on Zavacky's affidavit.

The items served on Celestine during the search were the warrant's face sheet, captioned "Search Warrant on Written Affidavit," and two attachments ("Attachment A" and "Attachment B"). The face page of the warrant stated, in pertinent part:

Affidavit(s) having been made before me by the below-named affiant that he/she has reason to believe that the premises known as SEE ATTACHMENT A in the Central District of California there is now being concealed property, namely: SEE ATTACHMENT B and as I am satisfied that there is probable cause to believe that the property so described is being concealed on the person or premises above-described and the grounds for application for issuance of the search warrant exist as stated in the supporting affidavit(s).

Attachment A specified the premises to be searched, and Attachment B, which listed the items to be seized, specified that the items to be seized were evidence of violations of 21 U.S.C. §§ 841(a)(1), 843(b), and 846, as well as 18 U.S.C. § 1956. The affidavit in support of probable cause, however, was served on Celestine's attorney only after the search.

Celestine moved for suppression of the evidence from the search before the district court. The court held a hearing at which Zavacky testified that he served Celestine within the first ten minutes of the search, once the house was safe and the agent had gone downstairs to look at the plants. Zavacky also testified that he served Celestine with the face sheet and attachments, but not with a copy of the affidavit in support of probable cause. Zavacky stated that he understood it to be DEA policy that "at that time I was not required to serve the affidavit at the location. I informed the defendant that he would receive a copy when he met with his defense attorney before he was arraigned." He also testified that his conclusion that the house used twice as much electricity as neighboring homes was based on his own visual assessment of the size of the comparator houses. Celestine also testified. He stated that he was not served with the

---

**3.** Grodan cubes are a popular medium for cultivating plants hydroponically. The cubes provide support for the plants' roots in the water and nutrient mixes that are essential to hydroponic cultivation. Frequently, mylar is used in indoor plant cultivation set-ups as a reflective material to reflect light back onto the plants.

warrant until hours into the search and he presented evidence that the comparator houses were considerably smaller than the castle-like house.

The district court denied the motion to suppress. The court reasoned that the affidavit had not been deliberately withheld and that service of the face sheet and the two attachments provided the defendant with the complete warrant. As to timeliness, the court found that Zavacky's testimony that he served Celestine within 10 minutes of beginning the search was credible.

Celestine pled guilty conditionally, and following the acceptance of his plea and sentencing, this appeal ensued.

## II. Standards of Review

■ We review the district court's decision not to suppress evidence from the search de novo as a question of law, but the trial court's factual findings are reviewed for clear error. *United States v. Gantt,* 194 F.3d 987, 1000 (9th Cir.1999). The issuance of a search warrant by a magistrate is reviewed for clear error to determine whether the magistrate had a substantial basis to conclude that the warrant was supported by probable cause. *See United States v. Wright,* 215 F.3d 1020, 1025 (9th Cir.2000).

## III. Discussion

### A. Service of the Warrant

Celestine contends that the evidence against him that was obtained in the search must be suppressed because Zavacky failed to serve him with the affidavit in support of the showing of probable cause during the search and because the district court erred in finding that the warrant was served on him at the outset of the search. He argues that the search violated Fed.R.Crim.P. 41.[4] We disagree.

### 1. Service of the Affidavit in Support of Probable Cause

■ It is not disputed that Zavacky served Celestine with the face sheet of the warrant and all the attachments incorporated into the warrant and necessary to satisfy the requirements of the Fourth Amendment. We conclude that this is all that is required under Rule 41. Rule 41(f)(3)[5] provides that the "officer executing the warrant must: (A) give a copy of the warrant and a receipt for the property taken to the person from whom, or from whose premises, the property was taken; or (B) leave a copy of the warrant and receipt at the place where the officer took the property." Fed.R.Crim.P. 41. We have held clearly that Rule 41 must be interpreted in the light of the policies that underlie the warrant requirement: providing the property owner assurance of the lawful authority of the executing officer, his need to search, and the limits of his power to search. *See Gantt,* 194 F.3d at 990; *see also United States v. Chadwick,* 433 U.S. 1, 9, 97 S.Ct. 2476, 53 L.Ed.2d 538 (1977), *abrogated on other grounds, California v. Acevedo,* 500 U.S. 565, 111 S.Ct.

---

**4.** The version of Fed.R.Crim.P. 41 that was in force at the time the search and seizure at issue here occurred has been superseded. However, except in respect to new Rules 41(b)(3), 41(c)(1), and 41(d), the changes were stylistic only. *See* Appendix to Title 18, United States Code, Fed.R.Crim.P. 41. None of the sections that was changed substantively is at issue in the present case. Therefore, our case law interpreting the former Rule 41 governs this appeal.

**5.** Former Rule 41(d) provided, in pertinent part: "The officer taking property under the warrant shall give to the person from whom or from whose premises the property was taken a copy of the warrant and a receipt for the property taken or shall leave the copy and receipt at the place from which the property was taken."

1982, 114 L.Ed.2d 619 (1991). To comport with Rule 41, the government must serve "a complete copy of the warrant at the outset of the search." *Gantt*, 194 F.3d at 990.

■ Here, the important policies that underlie the warrant requirement were satisfied by the elements of the warrant that Zavacky served on Celestine during the search. The face sheet and attachments provided sufficient indicia of the agents' lawful authority to conduct the search, what and where they legally could search, and the crimes for which evidence was sought: The face sheet of the warrant clearly stated that a magistrate judge had found probable cause for the search, thus indicating the agents' legal authority. *See Gantt*, 194 F.3d at 990–91. The limits of that authority were set out by Attachment A and Attachment B that stated, with particularity, where the agents could search and what they could seize. *Id.* The attachments also provided Celestine with adequate notice of the purpose of the search by specifying the federal crimes that were suspected and for evidence of which the search was conducted.

■ This conclusion does not detract from our cases holding that affidavits that delineate the authority to search and the location and items covered by the search are part of a warrant and must be served at the time the search is conducted. *See United States v. McGrew*, 122 F.3d 847, 849–50 (9th Cir.1997). However, if the face sheet and attachments clearly state that the agents have lawful authority to conduct the search and specify the location to be searched and the items sought, the affidavit supporting the probable cause determination need not be served at the time of the search. In this case, the face sheet and attachments satisfy these requirements.

Celestine has raised no pressing policy or other consideration that might weigh in favor of a contrary conclusion. There is little, in practical terms, that an individual can do to challenge peaceably the sufficiency of a showing of probable cause at the time a search is being conducted. By contrast, the law provides assurances that the issue may be determined *after* a search. The question of whether a warrant was supported by probable cause may be raised, as here, by a motion to suppress in the court that tries any criminal case that relies on evidence obtained in the search. It may also be challenged in a civil action arising out of an alleged illegal search.

Here, the service of the affidavit after the search did not prejudice any of Celestine's rights and did not violate the requirements of Rule 41.

### 2. Timeliness

■ Celestine contends that the district court erred when it found that the warrant was timely served at the outset of the search. At the suppression hearing Celestine testified that Zavacky did not serve him with a copy of the warrant until hours into the search of the Wake Court house. Zavacky, to the contrary, testified that the warrant was served within 10 minutes of starting the search. The district court resolved the conflicting evidence in favor of the government.

■ The resolution of such conflicting testimony is properly a matter for the district court, and we will not disturb that court's findings unless we are convinced that the district court's error is clear. *Gantt*, 194 F.3d at 1000. Celestine has not shown us that the district court's decision to credit the testimony of Zavacky was clearly erroneous.

### B. Probable Cause

Because we have determined that the search warrant was properly served, we

must also consider whether it issued on probable cause. Celestine makes two arguments that the warrant was not supported by probable cause. First, he claims that the affidavit in support of probable cause does not demonstrate facts that demonstrate the existence of probable cause. Second, he argues that because the warrant contained false statements by Zavacky it does not support a valid showing of probable cause. Neither argument has merit.

### 1. Sufficiency of the Showing of Probable Cause

■ Celestine argues that the warrant was not supported by probable cause because the confidential informant's reliability was not sufficiently corroborated and the other facts set out in the affidavit are consistent with innocent conduct. An affidavit in support of a search warrant demonstrates probable cause if, under the totality of the circumstances, it reveals a fair probability that contraband or evidence of a crime will be found in a particular place. *See Illinois v. Gates,* 462 U.S. 213, 238, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983). A court must uphold a warrant if, "under the totality of the circumstances, the magistrate had a substantial basis for concluding that probable cause existed." *United States v. Schmidt,* 947 F.2d 362, 371 (9th Cir.1991).

■ There was a sufficient basis for the magistrate to believe that a fair probability existed that evidence of drug crimes was present in the house, even if the government did not reveal information about the reliability of the unidentified source. Zavacky found evidence of marijuana on scissors in the trash, evidence of hydroponic culture, and evidence linking use of the residence to other suspected indoor marijuana growers. Although each piece of evidence in isolation might not suffice to demonstrate probable cause, together the evidence establishes an adequate basis to conclude that evidence of drug growing would be found in the house.

### 2. Deliberate Falsehoods

■ Celestine also argues that Zavacky deliberately misled the magistrate judge about the house's comparative electrical use. A defendant may succeed in challenging the validity of a warrant if he can show that a false statement was knowingly and intentionally, or with a reckless disregard for the truth, included in an affidavit in support of probable cause, and the falsified information was necessary to the finding of probable cause. *See Franks v. Delaware,* 438 U.S. 154, 155–56, 98 S.Ct. 2674, 57 L.Ed.2d 667 (1978).

■ The statement that Celestine challenges addresses the relative size of the house and the other homes against which Zavacky compared it. The statement helped show that the castle-like house, consistent with a drug growing operation, used considerably more electricity than similar houses in the neighborhood. However, even assuming that Zavacky's statement was deliberately false, it was not necessary to demonstrate probable cause. Although the question of the existence of probable cause is closer if we disregard all statements about and inferences regarding the house's comparative electricity use, there was still a sufficient and reasonable basis to believe that evidence of drug growing would be found inside the residence. Thus, we conclude that the district court correctly held the warrant was based on probable cause and upheld its validity.

### IV. Conclusion

In sum, we conclude that the district court committed no error because service of the search warrant did not violate Rule

41 and the warrant itself was based on probable cause and was otherwise valid.

**AFFIRMED.**