**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 10-2386
_____

BRUCESTAN T. JORDAN,

Appellant

v.

EDMOND C. CICCHI; COUNTY OF MIDDLESEX; MIDDLESEX COUNTY;
MIDDLESEX COUNTY ADULT CORRECTION CENTER;
NJ DEPARTMENT CORRECTIONS; INSERVCO INSURANCE SERVICES
INCORPORATED;PENNSYLVANIA NATIONAL MUTUAL CASUALTY INSURANCE
COMPANY; WESTPORT INSURANCE CORPORATION; CASEY GROUSER

_____

On Appeal from the United States District Court
for the District of New Jersey
(D.C. Civil Action No. 3-08-cv-06088)
District Judge:  Honorable Anne E. Thompson
_____

Submitted Pursuant to Third Circuit LAR 34.1(a)
May 10, 2011

Before:  BARRY, JORDAN and GARTH, Circuit Judges

(Opinion filed May 20, 2011 )

_____

OPINION
_____

PER CURIAM

Pro se appellant Brucestan T. Jordan appeals from the orders of the United States

District Court for the District of New Jersey denying his motion to reopen to file a second amended complaint and denying his motion for reconsideration of that order. We will affirm the Court's orders in part, and vacate in part and remand for further proceedings.

Because the parties are familiar with the history and facts of the case, and because the District Court's opinions set forth the allegations of the complaint and the relevant details of the litigation, we will not provide a detailed account. In 2008, Jordan initiated his lawsuit against the defendants concerning an incident while he was incarcerated at the Middlesex County Adult Correctional Center.[1] He amended the complaint several times during the course of proceedings. Chief among the allegations was his statement that the prison prohibited contact between him and his family during a visit that was noticed as a contact visit. After the visit ended, unidentified correctional officers ordered Jordan to submit to a visual body cavity strip search. When Jordan refused, he was forced to comply when officers removed his clothing, kicked him to the floor, and stomped on his upper back. Jordan alleged that the search was performed in a harassing manner and caused injuries to his back and shoulder. Jordan then received a false disciplinary charge and was placed in "lockup" for seven days, which interfered with his preparation for a scheduled oral argument in another court case. Jordan asserted multiple grounds for liability and sought assorted relief including damages of more than $70 million. The Middlesex County defendants filed an answer.

---

[1] Jordan is currently incarcerated at the Federal Correctional Institution at Miami, Florida.

Jordan was granted in forma pauperis status in District Court. On June 18, 2009, the District Court dismissed the complaint under 28 U.S.C. § 1915(e)(2)(B)(ii) for failure to state a claim upon which relief may be granted. Concerning liability under 42 U.S.C. § 1983, the District Court found that no facts were alleged that would suggest personal involvement or policymaking by Warden Cicchi or the County of Middlesex. The District Court dismissed these claims without prejudice. The District Court dismissed with prejudice the claims against the New Jersey Department of Corrections and the Middlesex County Corrections Center, stating that the Department was entitled to Eleventh Amendment immunity, and that neither the Department nor the Corrections Center are "persons" amenable to suit under section 1983. The District Court also dismissed with prejudice Jordan's First Amendment access to courts claim, noting the failure to name any defendant involved in the claim, and concluding that Jordan's allegations regarding a seven-day lack of access to the prison law library did not demonstrate any actual injury to his oral argument that took place more than one month later. In addition, the District Court dismissed without prejudice the claims against certain insurance companies and a claims representative. The District Court concluded that Jordan's allegations concerning the denial of his claim for compensation for the incidents described in the complaint were insufficient to state claims of violations of 42 U.S.C. §§ 1985 and 1986, as there were no allegations suggesting any discriminatory animus. The District Court granted Jordan leave to file a motion to reopen with a proposed amended complaint.

Jordan filed a motion to reopen with a proposed amended complaint, in which he re-alleged facts concerning the strip search and denial of administrative compensation claims and asserted violations of the Fourth Amendment, Eighth Amendment, and Fourteenth Amendment. He also asserted violations of assorted federal laws, including the Interstate Agreement on Detainers Act, the False Claims Act, the Sherman Anti-Trust Act, the White Slave Traffic Act, and the Civil RICO Act. Newly-named defendants included an identified corrections officer, who allegedly directed unknown officers to perform the strip search and who authored the resulting disciplinary report for Jordan's refusal to submit to a search. Other new defendants included the State of New Jersey, the County of Middlesex, and the County's Board of Chosen Freeholders, whose relationship to the action was alleged to have stemmed from their roles as supervisors and employers. The county defendants filed their opposition to the motion.

On March 9, 2010, the District Court denied the motion to reopen and denied leave to file an amended complaint. The District Court concluded that the proposed second amended complaint failed to cure the deficiencies noted regarding the claims previously dismissed under section 1915(e)(2)(B)(ii). The District Court also concluded that Jordan's allegations failed to state constitutional violations asserted under the Fourth Amendment (concerning unreasonable searches), Eighth Amendment (concerning cruel and unusual punishment), and Fourteenth Amendment (concerning due process and equal protection). Further, the District Court concluded that Jordan's complaint failed to allege facts suggesting a basis for the claims under the various federal statutes. Accordingly,

4

the District Court denied Jordan's motion to reopen and denied all pending motions. By order entered April 20, 2010, the District Court denied Jordan's timely motion for reconsideration. Jordan appeals. We have jurisdiction to consider both the order denying the motion to reopen and the order denying the motion for reconsideration. 28 U.S.C.§ 1291; Fed. R. App. P. 4(a)(4).

At the outset, we note that Jordan's appeal is limited to the District Court's decision concerning his claims relating to the unlawful strip search and use of excessive force (alleging violations of the Fourth, Eighth, and Fourteenth Amendments and under sections 1983, 1985, and 1986), along with his First Amendment "access to courts" claim and his claim under the Interstate Agreement on Detainers Act. The other issues are waived, as they are not argued in Jordan's opening brief. See Kost v. Kozakiewicz, 1 F.3d 176, 182 (3d Cir.1993); Fed. R. App. P. 28(a).

Several of the issues on appeal require little discussion. Upon consideration of the record, for essentially the same reasons as those stated by the District Court in its opinions, we will affirm the District Court's disposition of the claims under the Interstate Agreement on Detainers Act (argued by Jordan as a claim under the Equal Protection Clause), the First Amendment,[2] and under sections 1985 and 1986. We agree that Jordan

---

[2] Regarding his "access to courts" claim, Jordan contests only the District Court's finding that the dismissal of his complaint counts as his third "strike" for purposes of 28 U.S.C. § 1915(g), which would subject him to the "imminent danger" requirement before being allowed to proceed in forma pauperis in future actions. Jordan notes in his reply brief that he does not have three strikes in light of pending appeals of the cases relied upon by the District Court in assessing his strikes. Indeed, the fact of this current

5

has failed to state a claim on these grounds.

Next, we turn to Jordan's claims relating to the strip search incident. Regarding his due process claim, Jordan argues, inter alia, that he was denied a protected liberty interest in being able to shake hands, embrace, and kiss his visitors at the start and conclusion of a visit, pursuant to the policy at N.J.D.O.C. 10A:18-6.16(d). Paragraph 20 of Jordan's proposed amended complaint stated that the change in his contact visit to a non-contact visit was an undisclosed, unwritten county policy. He also stated that the change in policy was implemented in his case by unidentified correctional staff, who informed Jordan that if any contact occurred, the visit would come to an end. Jordan thus argues that he stated a claim of a due process violation for a change in the visitation policy without proper notice, and that the District Court erred in its disposition of this claim with respect to defendants Cicchi and County of Middlesex.

Concerning the County of Middlesex, it appears from Jordan's allegations that it was named as a defendant as Cicchi's employer. To the extent that Jordan asserted that the deprivation of a contact visit in his case was pursuant to an unwritten internal custom, in order to establish the county's liability under section 1983, Jordan would have to show that the custom is so well-settled and permanent as to constitute law. See Watson v.

_____

appeal validates Jordan's position. A dismissal does not qualify as a "strike" for § 1915(g) purposes until a litigant has exhausted or waived his or her appeals. See Jennings v. Natrona County Det. Ctr. Med. Facility, 175 F.3d 775, 780 (10th Cir. 1999); Adepegba v. Hammons, 103 F.3d 383, 387-88 (5th Cir. 1996). The District Court prematurely assessed Jordan with a third strike, without accounting for the possibility that the dismissed case might be reinstated on appeal. See Adepegba, 103 F.3d at 387.

Abington Twp., 478 F.3d 144, 155-56 (3d Cir. 2007). Jordan did not allege any facts in his proposed amended complaint beyond his single incident that would suggest a well-settled custom of changing contact visits into non-contact visits. See id. at 157.

As for defendant Cicchi, to the extent that he was sued simply because of his role as the warden, the claim fails. See Rode v. Dellarciprete, 845 F.2d 1195, 1207 (3d Cir. 1986) ("defendant in a civil rights action must have a personal involvement in the alleged wrongs; liability cannot be predicated solely on the operation of *respondeat superior*."). Jordan alleged that Cicchi was responsible for promulgating or enforcing a change of policy from contact visits to no-contact visits. Jordan provides no allegations other than the incident against him to establish that there was any change in policy; the allegation of this one-time incident is insufficient to establish a change in policy, and the due process claim against Cicchi fails. See Watson, 478 F.3d at 155-56.

We now consider Jordan's Fourth Amendment argument that the strip search was unreasonable. Jordan contended that the written policy provided for a strip search to be performed after a contact visit, and there was no probable cause for a strip search in his case because he was denied a contact visit with his family. We are troubled somewhat by the District Court's analysis of this claim. The District Court began with Bell v. Wolfish, 441 U.S. 520 (1979), which discussed body cavity searches following a contact visit from a person outside the institution and the security interest of preventing the smuggling of

7

contraband into the facility.[3] Here, however, Jordan alleged in his proposed amended complaint that the visit in question was not a contact visit. Specifically, he alleged that corrections officers instructed him and his family at the beginning of the visit that no contact would be allowed, and that he and his family sat at a table equipped with a barrier to prevent any contact. Jordan also alleged that the visit was conducted under constant video surveillance by guards, thereby preventing any possible contact to go undetected. Despite these allegations, and instead of accepting as true the factual allegations in the complaint in evaluating the complaint under section 1915(e), see Nami v. Fauver, 82 F.3d 63, 65 (3d Cir. 1996), the District Court stated that Jordan's description of the visit as a non-contact visit was merely "self-serving." Instead, the District Court found that the visit was "something of a hybrid," noting that the party sat together at a table in a visiting room, "presumabl[y] used by other prisoners and their visitors." (District Court Mar. 9, 2010 Opinion at 13.) Thus, the District Court concluded that the body cavity search was not unreasonable under the circumstances, but it appears that it reached that conclusion by "presuming" that Jordan had opportunities for contact with other prisoners and visitors during the visit. On this record, we cannot conclude that Jordan has made bare assertions of entitlement to relief without any factual contentions in support of his Fourth Amendment claim. See Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009).

---

[3] This Court recently revisited Bell and concluded that the security interest was as strong at the time of arrestee intake as after contact visits. See Florence v. Board of Chosen Freeholders of County of Burlington, 621 F.3d 296 (3d Cir. 2010).

8

Lastly, we consider Jordan's allegations of excessive force, which Jordan framed as a separate constitutional violation under the Eighth Amendment. The District Court concluded that the allegations relating to the strip search must be analyzed under the Fourth Amendment, stating that the Fourth Amendment is the explicit source for the constitutional protection against unreasonable searches, and thus, Jordan did not state a claim under the Eighth Amendment.[4] An analysis of an excessive force claim may proceed under either the Fourth Amendment (unreasonable seizures of the person), or the Eighth Amendment (cruel and unusual punishments), the Eighth Amendment being the primary source of protection after an individual's conviction. See Graham v. Connor, 490 U.S. 386, 394-95 (1989). In concluding that the Fourth Amendment applied to Jordan's allegations, the District Court cited Doe v. Groody, 361 F.3d 232, 238 n.3 (3d Cir. 2004), a case that involved a search and seizure of individuals outside of a prison context. We note that the appellees state in their brief that Jordan was a pretrial detainee at the time of the events. Jordan does not identify himself in that manner in the amended complaint, and the District Court's opinion does not contain a finding or description of Jordan's inmate status at the time of the incident.[5] In any event, in evaluating Jordan's allegations, the District Court found that a reasonable amount of force was used during

---

[4] It appears that the District Court may have believed that Jordan's allegations of excessive force used during the strip search were subsumed within his claim that the search itself was unreasonable, but it is unclear from the District Court's opinion why it reached that determination.

[5] In its June 18, 2009 opinion, the District Court refers to Jordan as a "prisoner," rather than a "detainee."

the search in light of Jordan's failure to comply to the strip search.[6] The District Court

noted Jordan's allegations of having his clothing removed and being compelled to make

his body parts available for visual inspection, with a demand to cough, and found that

"Plaintiff's own allegations reflect that a reasonable amount of force was used to compel

cooperation following Plaintiff's refusals to cooperate." (District Court Mar. 9, 2010 Op.

at 14.) However, Jordan further alleged that the officers conducting the search also

kicked him to the floor and vigorously stomped on his upper back. Jordan argues that

this force was excessive, among other reasons, because he was already on the floor,

naked. The District Court did not discuss Jordan's allegations of being kicked and

stepped on during the search, and we will not consider the matter in the first instance on

appeal.

We therefore affirm the District Court as to all claims except for Jordan's claims

of an unreasonable search and use of excessive force and will remand for further

consideration by the District Court.

---

[6] The District Court also concluded that the false disciplinary report and resulting seven-day confinement in lockup also did not state a claim under the Constitution, which Jordan does not contest.